IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BELINDA BILLALBA GARCIA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-1458-L-BH |
| | § | |
| FEDERAL HOME LOAN MORTGAGE | § | |
| CORPORATION and NEXBANK SSB, | § | |
|     Defendants. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court for recommendation is the defendants' *Motion and Application for Attorneys' Fees*, filed July 6, 2020 (doc. 10). Based on the relevant filings and applicable law, the motion should be **GRANTED in part**.

**I. BACKGROUND**

This application for attorneys' fees arises out of a lawsuit involving real property located at 726 Echo Drive, Grand Prairie, Texas 75052 (Property). (*See* doc. 2-2 at 1.)[2] Belinda Billalba Garcia (Plaintiff) filed suit against Federal Home Loan Mortgage Corporation (Freddie Mac) and NexBank SSB (NexBank) (collectively Defendants) on May 11, 2020, in the 298th Judicial District Court in Dallas County, Texas, alleging "a void home equity lien that failed to comply with Article XVI, § 50(a)(6), of the Texas Constitution." (*See id.*)

On April 10, 2019, Plaintiff executed a Texas Home Equity Note (Note) in favor of LoanDepot.com, LLC (Lender) for a home equity loan in the principal amount of $116,000.00. (docs.

---

[1]By *Special Order No. 3-251*, this foreclosure case was automatically referred for full case management, including determination of non-dispositive motion and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

2-2 at 3; 11-1.) She contemporaneously executed a Texas Home Equity Security Agreement (Security Instrument) that granted Lender a security interest in the Property to secure repayment under the Note. (doc. 2-2 at 3, 12-34.) It specified that "[i]t is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution." (*Id.* at 26.) She also executed a Texas Home Equity Affidavit and Agreement (Affidavit) swearing, in part, that "[t]he Extension of Credit is being closed, that is I am signing the loan documents, at the office of the Lender, an attorney at law, or a title company." (doc. 11-3 at 4.) On March 9, 2020, Plaintiff sent a letter to Freddie Mac, the current owner of the Note, claiming that "there were some violations of the Texas Constitution on the loan at closing" that needed to be cured, including, in relevant part, that "[t]he loan was closed somewhere that wasn't your office, a title company's office, or an attorney's office." (doc. 2-2 at 3, 37.) Defendants failed to cure this defect. (*Id.* at 3.)

The state court petition alleged that the home equity loan was void because it was not closed "at the office of the lender, an attorney at law, or a title company" in violation of § 50(a)(6)(N). (*Id.* at 3.) It also alleged that Defendants were in breach of the Security Instrument because they failed to cure a constitutional defect after receiving notice. (*Id.*) It asserted claims for breach of contract, quiet title, and declaratory relief under the Texas Declaratory Judgment Act (TDJA), and sought monetary damages, pre- and post-judgment interest, attorney's fees, and costs of court, as well as a judgment that declares the Security Instrument and Note void, quiets title in Plaintiff, and that all payments made be returned to Plaintiff. (*Id.* at 4-10.)

After Defendants removed the case to federal court on June 8, 2020, they moved to dismiss

2

the action under Rule 12(b)(6) for failure to state a claim on June 15, 2020. (docs. 1, 7.) The motion to dismiss argued that "[a]ll of Plaintiff's claims stem from a single allegation that her home equity loan allegedly did not close 'at the office of the lender, a title company or an attorney's office' as required by Art. XVI §50(a)(6)(N) of the Texas Constitution, and that Defendants failed to cure this defect after notice was given," but "the alleged constitutional violation is directly contradicted by the sworn and publicly recorded Home Equity Affidavit that Plaintiff signed under oath at loan closing." (*Id.* at 13-14.) It argued that because Plaintiff's sworn statement directly contradicted the factual allegations supporting her claims, they failed as a matter of law and must be dismissed. (*Id.* at 15.) On June 19, 2020, Freddie Mac served written discovery on Plaintiff. (docs. 10 at 19; 11-5 at 13.) On June 23, 2020, she voluntarily dismissed the case without prejudice under Rule 41(a)(1)(A)(i). (docs. 9, 13.)

On July 6, 2020, Defendants moved for $60,375 in attorneys' fees against Plaintiff under § 38.001(8) of the Texas Civil Practice & Remedies Code and the Security Instrument, the Court's inherent power, and the TDJA, as well as against Plaintiff's counsel under 28 U.S.C. § 1927. (*See* doc. 10.) They base their claim for fees on paragraph 9 of the Security Instrument, which provides:

> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or fights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over This Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy

3

> proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.
>
> Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(doc. 11-2 at 8-9.) Plaintiff responded to their motion on August 6, 2020, and Defendants replied on August 14, 2020. (docs. 16, 18.) The motion is now ripe for recommendation.

## II. MOTION FOR ATTORNEYS' FEES[3]

"It is a long-recognized principle that federal courts sitting in diversity cases[, such as this one], 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). State substantive law governs awards of attorneys' fees. *Chevron USA, Inc. v. Aker Maritime Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). Federal procedure requires that claims for attorneys' fees generally be made by motion filed within 14 days of the entry of judgment under Fed. R. Civ. P. 54(d)(2). *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996); *see also Evanston Ins. Co. v. Graves*, 3:13-CV-959-D, 2013 WL 4505181, *1 (N.D. Tex. Aug. 23, 2013) ("Rule 54(d) does not create a substantive right to attorney's fees. It is a procedural rule that provides that a claim for attorney's fees

---

[3]Defendants' motion requests "an award of reasonable attorneys' fees *and costs* against Plaintiff," but it does not specify any costs that they are seeking. (*See* doc. 10 at 1 (emphasis added).)

4

and related nontaxable expenses is to be made by motion."); *CSMG Technologies, Inc. v. Allison*, No. 4:07-CV-0715, 2009 WL 2242351, *3 n. 20 (S.D. Tex. July 24, 2009) (noting that party seeking attorney's fees under Texas law in a diversity case must still follow federal procedural rules). The party seeking fees has the burden to "specify the judgment and the statute, rule, or other grounds" that entitles it to the award. *See* Fed. R. Civ. P. 54(d)(2)(B)(ii).

**A.     Against Plaintiff**

Defendants seek to recover $60,375.00 in attorneys' fees from Plaintiff under § 38.001(8) of the Texas Civil Practice & Remedies Code and the Security Instrument, the Court's inherent power, and the TDJA. (*See* doc. 10 at 22-25, 28.)

*1.     Entitlement*

Defendants argue that they are entitled to attorneys' fees against Plaintiff under § 38.001(8) of the Texas Civil Practice & Remedies Code because she "expressly agreed in the Security Instrument to be liable for those attorneys' fees." (doc. 10 at 23.)

Under Texas law, a party may recover attorneys' fees only when allowed by statute or contract. *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009)); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006). Texas law allows the recovery of attorneys' fees when allowed by language in a deed of trust or a mortgage contract. *See Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1040 (5th Cir. 2014) (analyzing Texas law to determine that motions for attorneys' fees provided by mortgage contracts are permissible); *Velazquez v. Countrywide Home Loans Servicing*, 660 F.3d 893, 899 (5th Cir. 2011) (recognizing the recovery of attorneys' fees under a deed of trust).

5

Here, the Security Instrument provides that Plaintiff shall pay the reasonable attorneys' fees incurred by Defendant to protect its interest in the Property or rights under the Security Instrument. (doc. 2-2 at 19-20 (If . . . there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . . includ[ing], but are not limited to . . . paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.").) Because Plaintiff's suit threatened Defendants' interest in the Property as well as their rights under the Security Instrument, under Texas law, its language entitles Defendants to recover the attorneys' fees incurred while protecting their rights. *See Castiblanco v. Wells Fargo Bank, N.A.*, No. H-12-473, 2013 WL 6079519, *3 (S.D. Tex. Nov. 19, 2013); *Parker v. U.S. Bank Nat. Ass'n*, No. 3:12-CV-4297-L, 2014 WL 2883919, at *5 (N.D. Tex. June 25, 2014).

Plaintiff argues Defendants are not entitled to attorneys' fees because they are not prevailing parties. (doc. 16 at 8.) She contends that "because [she] voluntarily dismissed her lawsuit without prejudice, neither party is considered the prevailing party and the Rule 41(a)(1)(i) dismissal functions to place Plaintiff back in the legal position as if she never filed suit." (*Id.*) Although a party must establish that it is a prevailing party to recover its attorneys' fees under § 38.001(8) of the Texas Civil Practice & Remedies Code, "parties are free to contract for shifting of attorneys' fees without such limitations." *Range v. Calvary Christian Fellowship*, 530 S.W.3d 818, 837-38 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *see Garcia v. Wells Fargo Bank, N.A.*, No. 3:12-CV-645-P, 2012 WL

6

12873202, at *6 (N.D. Tex. Oct. 26, 2012) ("Contractual agreements providing for the recovery of attorney's fees supersede the statutory provisions for the recovery of fees found in Texas Civil Practice & Remedies Code chapter 38."). Because Defendants seek attorneys' fees under § 38.001(8) and the Security Instrument, and "[t]he contract does not condition [Defendants'] recovery of costs, expenses, and attorney's fees on [Defendants] being a prevailing party in the lawsuit," the prevailing party requirement of § 38.001(8) does not apply. *Calhoun/Holiday Place, Inc. v. Wells Fargo Bank, N.A.*, 01-14-00872-CV, 2016 WL 7671372, at *7 (Tex. App.—Houston [1st Dist.] Dec. 22, 2016, pet. denied); *see One Call Systems, Inc. v. Houston Lighting and Power*, 936 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (affirming award of attorney's fees, despite the absence of other affirmative relief, because the parties were free to adopt by contract a more liberal standard for the recovery of attorney fees than required under § 38.001); *see, e.g., Am. Realty Tr., Inc. v. Matisse Capital Partners, L.L.C.*, No. CIV.A.3:00CV1801-G, 2005 WL 81705, at *3 (N.D. Tex. Jan. 13, 2005) ("Since the defendants do not dispute that they entered into the Joint Stipulation and that the Consulting Agreement was valid, the court need not consider the requirements of § 38.001(8) because the contract provision and stipulation control.").

Plaintiff also argues that the provision in the Security Instrument "is a boilerplate provision in every Texas home equity loan," and "applying it towards litigation under the Texas Constitution would be a de facto contractual circumvention of the constitution's strict requirements, which is prohibited under Texas law." (doc. 16 at 13.) She provides no legal authority in support of this argument, however, or cite any decisions denying recovery of attorneys' fees under this "boilerplate provision" because it violated the Texas Constitution. Moreover, Texas courts and federal courts applying Texas law have awarded attorneys' fees based on the same language in similar security

7

instruments. *See Calhoun/Holiday Place, Inc.*, 2016 WL 7671372, at *7; *In re Velazquez*, 660 F.3d 893, 895-96, 899 (5th Cir. 2011) (finding virtually identical language in a deed of trust to permit the recovery of attorneys' fees); *see also HSBC Bank USA, N.A. for Merrill Lynch Mortg. Inv'rs Tr., Mortg. Loan Asset-Backed Certificates, Series 2005-WMCI v. Crum*, No. 3:14-CV-3522-B, 2017 WL 2362017, at *2 (N.D. Tex. May 31, 2017) ("The language in the [home equity note and security instrument] indicates that Plaintiff may recover attorney's fees incurred in pursuing its claims, insofar as such recovery does not violate the Texas Constitution."). Defendants have shown that they are entitled to their attorneys' fees under the Security Instrument.[4]

    2.    *Reasonableness*

Defendants also contend that their request for $60,375.00 in attorneys' fees is reasonable. (doc. 10 at 28-34.)

"Although courts should consider several factors when awarding attorney's fees, a short hand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). In *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), the Texas Supreme Court identified the following factors to be considered in determining reasonableness:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;

---

[4]Because Defendants are entitled to their attorneys' fees against Plaintiff under the terms of the Security Instrument, it is not necessary to consider the remaining claims against Plaintiff for attorneys' fees under the Court's inherent power or under the TDJA.

> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 818 (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b)). The fee applicant is not required to present evidence on all of the factors. *Weaver v. Jamar*, 383 S.W.3d 805, 814 (Tex. App.–Houston [14th Dist.] 2012, no pet.). "The trial court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Id.*

In Texas, uncontroverted attorney testimony or an affidavit testifying to the attorney's qualifications, reasonableness of the attorney's fees, and the basis for the opinion may be sufficient to support an award of attorneys' fees. *See Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.–Fort Worth 1997, no writ) ("Where . . . trial counsel's testimony concerning attorneys' fees is clear, positive and direct, and uncontroverted, it is taken as true as a matter of law. This is especially true where the opposing party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so."). "The court, as a trier of fact, may award attorneys' fees *as a matter of law* in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (emphasis added).

Here, Defendants submit declarations from their counsel, as well as their corresponding

9

billing records. (*See* docs. 11-5, 11-6.) The attorneys' declarations and the billing records set out the hourly rates for the individuals who worked on the case (*see* docs. 11-5 at 3; 11-6 at 2), address the background and qualifications of the attorneys, (*see* docs. 11-5 at 2-3; 11-6 at 1-2), state that their rates are reasonable based on their skills and experience (*see* docs. 11-5 at 3; 11-6 at 2), and opine that the fees incurred are reasonable and necessary (*see* docs. 11-5 at 2; 11-6 at 2-3). One declaration states that "a reasonable and appropriate attorneys' fee through the date of this declaration is 177.7 hours of attorney time at $250.00 per hour and 4.0 hours of paralegal time at $125 per hour for a total of $44,925.00." (doc. 11-5 at 16.) Another states that "all time expended (77.25 hours) and all fees charged ($15,450.00) . . . are reasonable and appropriate, in light of the legal complexity and business implications of this Action." (doc. 11-6 at 12.)

      Plaintiff asserts that the total fee request of $60,375.00 is "entirely excessive and unwarranted," but fails to rebut or controvert Defendants' evidence. *See Jeanbaptiste v. Wells Fargo Bank, N.A.*, No. 3:14-CV-0264-K, 2014 WL 6790737, at *6 (N.D. Tex. Dec. 1, 2014) (finding opposing party's general assertions that fees were "unfair and unreasonable" were insufficient to refute billing records and the declaration from movant's attorney that its requested amount was reasonable). Under Texas law, it is "legally sufficient" for an award of attorneys' fees. *See In re Estate of Tyner*, 292 S.W.3d 179, 184 (Tex. App–Tyler 2009, no pet.) ("[A]ttorney swore under oath that he is a licensed attorney, he is familiar with the reasonable and necessary attorney's fees charged for appeals in civil actions such as this case, he has personal knowledge of the services rendered to [the party] in this matter, and those services were reasonable, necessary, and customary. Thus, [the party's] attorney's affidavit sufficiently established reasonable attorney's fees and is legally sufficient to support the trial court's award of attorney's fees."). The amount of attorneys' fees Defendants

seek is reasonable as a matter of law, and should be awarded. *See Ragsdale*, 801 S.W.2d at 882.[5]

**B.     Against Plaintiff's Counsel**

Defendants argue that they should also be awarded reasonable attorneys' fees from Plaintiff's counsel under 28 U.S.C. § 1927. (doc. 10 at 26-27.)

Section 1927 of the United State Code, Title 28, provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Before a court can award attorneys' fees under § 1927, it must make detailed findings that the proceedings were both unreasonable and vexatious. *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994). The Fifth Circuit has held this standard requires "that there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). The liability created under § 1927 is only for excessive costs due to persistent prosecution of a meritless claim. *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991). Courts often use repeated filings despite warnings from the court, or other proof of excessive litigiousness, to justify sanctions. *See Nat'l Ass'n of Gov't Employees v. Nat'l Fed'n of Fed. Employees*, 844 F.2d 216, 224 (5th Cir. 1988) (noting that this section prohibits "the persistent prosecution of a meritless claim") (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988) (en banc)); *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002).

---

[5] In her response, Plaintiff contends that the parties entered into a Rule 11 agreement on May 18, 2020 "which was intended to prevent litigation expenses" but was immediately disregarded by Defendants' counsel as reflected in their billing records. (doc. 16 at 12.)  She does not explain how the alleged breach of the Rule 11 agreement by defense counsel affects the request for attorneys' fees that had already been incurred.

11

The Fifth Circuit advises courts to impose sanctions under § 1927 "sparingly," and further cautions that except when the entire proceeding has been unwarranted, unreasonable, and vexatious and should therefore not have been initiated nor pursued, it will be inappropriate under § 1927 to shift the entire financial burden of an action's defense. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996) (quoting *Calhoun*, 34 F.3d at 1297). Under § 1927, monetary sanctions for expenses, costs, and attorneys' fees may be "imposed only on offending attorneys; clients may not be ordered to pay such awards." *Matta v. May*, 118 F.3d 410, 413-14 (5th Cir. 1997) (citing *Travelers Ins. Co. v. St. Jude Hosp.*, 38 F.3d 1414, 1416 (5th Cir. 1994)).

Here, Defendants argue that an award of attorneys' fees against Plaintiff's counsel is warranted because he initiated this litigation knowing that Plaintiff did not have a viable claim because it was based on factual allegations that were false and lacked evidentiary support. (doc. 10 at 26.) They contend that filing the lawsuit was unreasonable because the false statements in the petition "could have been (and should have been) verified by even a cursory review of Plaintiff's own copies of her loan documents . . . or at least the publicly recorded ones like the Home Equity Affidavit." (*Id.*) They also contend that "[t]his unreasonableness was compounded when Plaintiff's counsel unreasonably declined to dismiss this action immediately upon being advised that the loan did actually close at a constitutionally compliant location." (*Id.*)

As noted, Plaintiff voluntarily dismissed her suit without prejudice under Rule 41(a)(1)(i) after Defendants responded with a motion to dismiss, so her claims were not adjudicated. (*See* docs. 9, 13.) Her claims were not adjudicated, so there is no basis for finding that the entire proceeding has been unwarranted and should neither have been commenced nor pursued. *See Cappa Fund III, L.L.C. v. Actherm Holding, a.s.*, No. 3:10-CV-897-L, 2011 WL 817384, at *6 (N.D. Tex. Feb. 21, 2011),

rec. adopted 2011 WL 816861 (N.D. Tex. Mar. 9, 2011). Even if Plaintiff's claims against Defendants were baseless, this alone does not mean they were brought in bad faith or for an improper purpose. *See id.; see also EsNtion Records, Inc. v. TritonTM, Inc.*, No. 3:07-CV-2027-L, 2010 WL 3446910, at *5 (N.D. Tex. Aug. 31, 2010) (finding that party forced to defend against "objectively unreasonable" claims for which there was no evidence had not shown that opposing counsel had unreasonably and vexatiously multiplied the proceedings, bad faith, improper motive or reckless disregard so as to warrant an award for attorney's fees under § 1927); *Oblio Telecom, Inc. v. Patel*, No. 3:08-CV-0279-L, 2010 WL 99353, at *3 (N.D. Tex. Jan. 8, 2010) (holding that "bad faith" of counsel in bringing lawsuit or vexatiously multiplying proceedings cannot be inferred from pleadings alone). Because Defendants have failed to meet their burden to establish that the proceedings were both unreasonable and vexatious, it would not be appropriate under § 1927 to shift the entire financial burden of the action's defense. *See Calhoun*, 34 F.3d at 1297. Accordingly, their request for attorneys' fees against Plaintiff's counsel under § 1927 should be denied.

### III. RECOMMENDATION

Defendants' motion for attorneys' fees should be **GRANTED in part**, and Defendants should be awarded $60,375.00 in attorneys' fees from Plaintiff.

**SO RECOMMENDED** on this 20th day of January, 2021.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE